UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

                    07 Civ. 0120 (WCC)

JOSEPH RADCLIFFE,             :

                           **ECF CASE**

         Plaintiff,    :

   - against -        :        **OPINION**
                                 **<u>AND ORDER</u>**

INTERNAL REVENUE SERVICE,   :

         Defendant.   :

- - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

                            CALO AGOSTINO, P.C.
                            **Attorneys for Plaintiff**
                            14 Washington Place
                            Hackensack, New Jersey 07601

FRANK AGOSTINO, ESQ.
JAMES J. BONICOS, ESQ.

      Of Counsel


                            MICHAEL J. GARCIA
                            UNITED STATES ATTORNEY FOR THE
                              SOUTHERN DISTRICT OF NEW YORK
                            **Attorneys for Defendant**
                            86 Chambers Street
                            New York, New York  10007

ALLISON D. PENN,
  Ass't United States Attorney

      Of Counsel

**Conner, Sr. D.J.:**

Plaintiff Joseph Radcliffe brings this action, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against the Internal Revenue Service ("IRS") alleging a violation of his right to disclosure of information held by the IRS. Defendant now moves for summary judgment on the ground that the documents are exempt from disclosure. For the following reasons, defendant's motion is granted.

## BACKGROUND

Plaintiff is the subject of an ongoing IRS investigation and, in conjunction with that investigation, he submitted a FOIA request to the IRS. The IRS released certain responsive documents to plaintiff but withheld others pursuant to various FOIA exemptions. This litigation arises from plaintiff's objections to the IRS's exemption claims.

Plaintiff received a letter from Revenue Agent Mohanial Bhagwandeen dated March 27, 2006 notifying him that he was selected for examination and requesting that he meet with Bhagwandeen to discuss offshore credit card accounts in plaintiff's name which IRS records showed plaintiff had not disclosed. (Lambert-Dean Reply Decl. ¶ 8, Ex. A.) An Information Document Request ("IDR") was enclosed, requesting that plaintiff provide all bank statements, including foreign statements, for December 1, 2002 through January 31, 2005, and any other investment-account statements. (*Id*.) Plaintiff then sent a FOIA request to the IRS Disclosure Offices in Philadelphia, PA and Buffalo, NY by letters dated October 27, 2006 providing his name, address and social security number. (Lambert-Dean Decl. ¶ 3, Ex. A.; Pl. Mem. Opp. Summ. J. at 1.) Plaintiff requested the following records for the period 2000-2005: notices, letters, memorandum, contact history sheets, audit reports,

correspondence, IRS forms, liens and levies prepared by or received by the IRS, transcripts of account, records of assessments and abatements, any documents reflecting all account activity and transactions, any documents attached to the tax returns filed by plaintiff, persons contacted by the IRS with respect to plaintiff's tax liability, notices reflecting the payment of state taxes, any substitutes for returns, all third party information received by the IRS and all third party information relevant to the preparation or verification of any item on plaintiff's returns. (*Id.*) The IRS responded by letter dated November 22, 2006 stating that it required additional time to search for and collect the requested records and extending the time for its response to December 14, 2006. (Lambert-Dean Decl., Ex. B.) It sent another letter on December 8, 2006 extending the response date to January 25, 2007. (*Id.*, Ex. C.)

Plaintiff's attorney sent Agent Bhagwandeen a letter dated January 6, 2007 requesting an identification of the issues being investigated and plaintiff's liability. (Lambert-Dean Reply Decl. ¶ 9, Ex. B.) Before receiving a response to this letter and before receiving any documents pursuant to the FOIA request, plaintiff filed this action on January 8, 2007. On January 22, 2007, the IRS sent a letter to plaintiff stating that his request was transferred to the Disclosure Manager in Baltimore, MD, since that office had primary jurisdiction over the records because the documents plaintiff requested were associated with an IRS offshore credit card accounts project, and a Specialist there would contact plaintiff within thirty days. (Lambert-Dean Decl., Ex. D.)

Bhagwandeen wrote to plaintiff on January 30, 2007 scheduling another meeting to discuss the issues raised by the IRS examination and attaching another IDR. (Lambert-Dean Reply Decl. ¶ 10, Ex. C.) Plaintiff replied by letter on February 12, 2007 that he would not be attending the meeting; the letter also mentioned the pending FOIA action and again requested identification of the

issues being examined. (*Id.* ¶ 11, Ex. D.) Bhagwandeen responded by letter dated February 13, 2007 that the issue being examined was plaintiff's income and again requested a meeting to discuss the audit. (*Id.* ¶ 12, Ex. E.) Plaintiff sent Bhagwandeen another letter dated February 28, 2007 declining to meet and again referencing the FOIA action and requesting that the IRS produce any evidence it had regarding unreported income, or that the IRS wait until the resolution of the FOIA litigation to proceed with the audit. (*Id.* ¶ 13, Ex. F.) On March 29, 2007, the responsive documents were mailed to plaintiff with a letter stating that certain pages were being withheld pursuant to FOIA exemptions (b)(3) in conjunction with 26 U.S.C. § 6103, (b)(6), (b)(7)(A) and (b)(7)(C). (Agostino Decl. ¶ 13, Ex. 1.) Supervisory Internal Revenue Agent for Examination Gary Nichols, Bhagwandeen's supervisor, wrote to plaintiff on March 30, 2007 noting plaintiff's unresponsiveness to the IRS's repeated requests for information and requesting submission of information by April 23, 2007. (Lambert-Dean Reply Decl. ¶ 14, Ex. G.) Plaintiff's attorney responded by letter dated April 23, 2007 that the IRS consistently failed to identify the issues being examined and did not provide copies of files and reports, and asserted plaintiff's Fifth Amendment rights. (*Id.* ¶ 15, Ex. H.) Nichols responded by letter on July 12, 2007 that plaintiff was provided with all non-exempt records from his audit in the context of the pending FOIA litigation and that plaintiff still had not provided requested information or met with Agent Bhagwandeen; an IDR was again attached. (*Id.* ¶ 16, Ex. I.) Plaintiff responded by letter dated July 25, 2007 noting again the IRS's failure to identify the issues or provide copies of files, and the resulting need for plaintiff to file the FOIA suit. (*Id.* ¶ 17, Ex. J.) The IRS had issued a summons on June 28, 2007 to plaintiff requesting specific information with respect to the examination, to which plaintiff responded by letter dated July 26, 2007 providing no requested information and again asserting his Fifth Amendment privilege. (*Id.*

¶¶ 18-19, Exs. K & L.)

The IRS describes the search for documents responsive to plaintiff's request as follows. Upon receiving plaintiff's request at the Buffalo office, Nichols contacted Disclosure Specialist Beatrice Brogan Slocum. (Lambert-Dean Reply Decl. ¶¶ 3-4; Nichols Decl. ¶ 1.) Slocum accessed the IRS's Electronic Disclosure Information Management System ("E-DIMS")[1] and determined that the request was assigned to the Philadelphia office. (Lambert-Dean Reply Decl. ¶ 4.) Nichols contacted the Philadelphia office and learned that Senior Disclosure Specialist Sharon King was assigned to the request. (*Id.*) Nichols told King that his subordinate, Agent Bhagwandeen, had responsive documents. (*Id.*) King contacted Bhagwandeen, reviewed plaintiff's request and determined that Bhagwandeen did have responsive documents. (*Id.* ¶ 5.) Bhagwandeen then sent King a complete copy of plaintiff's file, which King forwarded to Deborah Lambert-Dean, an attorney in the Office of Chief Counsel, Procedure and Administration, for final processing. (*Id.*; Lambert-Dean Decl. ¶ 1.) Lambert-Dean concluded that the search had yielded all the documents plaintiff was seeking, "given that plaintiff had sent a copy of his FOIA request to the Buffalo office and plaintiff's description of the records requested matched the records that had been assembled by Revenue Agent Bhagwandeen"; therefore no further search was undertaken. (Lambert-Dean Reply Decl. ¶ 5.)

Lambert-Dean is responsible for coordinating the review and disclosure of documents pursuant to FOIA requests once a case is in litigation, and is familiar with and has reviewed the

---

[1] "E-DIMS is a nation-wide management information system for inventory control, casework management, and standardized reporting for the IRS's National Disclosure Program. It is a tool to help Disclosure Managers manage the disclosure requests, including FOIA requests, made to the Service's disclosure offices." (Lambert-Dean Decl., n.4.)

documents pertaining to plaintiff's request.  (Lambert-Dean Decl. ¶ 2.)  Lambert-Dean was assigned to plaintiff's request on January 24, 2007 and requested and received the documents from the Baltimore office on February 7, 2007.  (*Id*. ¶ 7.)  She reviewed the documents, which consisted of 276 pages, and determined that 126 pages could be released in their entirety and 18 pages could be released in part.  (*Id*. ¶ 8.)  The 126 complete pages and 18 redacted pages were mailed to plaintiff on March 29, 2007.  (*Id*.)  The remaining 132 complete pages and 18 redacted pages were withheld pursuant to various FOIA exemptions.  (*Id*. ¶ 9.)  The withheld pages are related to credit card accounts issued by foreign banks that were gathered by the IRS in response to John Doe summonses issued as part of the "Offshore Credit Card Project."  (Lambert-Dean Reply Decl. ¶ 6.)  Many of the documents at issue contain plaintiff's name, which is relatively common according to the IRS, and credit card account numbers but do not contain a social security number or other identifying information that would indicate they pertain to plaintiff.  (*Id*.; Lambert-Dean Decl. ¶ 10.)  The IRS maintains that it must withhold these documents pursuant to 21 U.S.C. § 6103(a) and FOIA exemption (b)(7)(C) until it can determine whether they pertain to plaintiff.  (Lambert-Dean Decl. ¶ 10; Lambert-Dean Reply Decl. ¶ 6.)  The IRS contends that it sent plaintiff letters and requests for information, but because plaintiff refused to meet with the Agent in charge or submit the requested information, the IRS has been unable to confirm that the documents pertain to plaintiff.  (Lambert-Dean Decl. ¶ 10; Lambert-Dean Reply Decl. ¶ 8.)

The documents at issue that the IRS contends may or may not pertain to plaintiff and are therefore exempt pursuant to Section 6103(a) include: information obtained through the IRS's

Offshore Credit Card Database, which are printouts from a search engine supported by Credomatic,[2] including credit card numbers, foreign addresses, payment, purchase and account balance information (pages 63-65); currency transaction reports ("CTRs") that include the name, address and social security numbers of persons other than plaintiff (pages 86-88); information associated with specific credit card numbers including payment information, available credit and purchase information for credit card accounts (pages 130-138 and 209-256); and Individual Master File transcripts or printouts from the IRS's Integrated Data Retrieval System ("IDRS") containing federal tax information for taxpayers other than plaintiff (pages 89-107, 163, 177, 186-190). (*Id.* ¶ 11.) The documents the IRS claims are exempt pursuant to (b)(7)(C) include pages 63-65, 86-88, 89-107, 163, 177, 186-190 and 209-256, and additionally include: printouts from the LexisNexis SmartLinx database for use in preventing or detecting fraud that include names, addresses, income data, home value data, age, education and partial social security numbers of persons other than plaintiff (pages 112-118, 121-123, 125-128); and a "Custom Comprehensive Report" consisting of public record information including the names, dates of birth, driver's license information, addresses, permits, and possible associates and relatives for persons other than plaintiff (pages 143, 147-148, 152-161, 191-207). (*Id.* ¶ 13.)

The IRS also maintains that several pages of documents are exempt pursuant to 26 U.S.C. § 6103(e)(7) and FOIA exemption (b)(7)(A) because the information was compiled for law

---

[2] "Credomatic is a credit card issuer and processor centered in Central America. The IRS served a John Doe summons on Credomatic of Florida for all documents of affiliates and subsidiaries pertaining to major credit card[s] issued through or for financial institutions in certain countries that the United States considers [to be] operating as 'tax havens.' The information responsive to plaintiff's request includes certain of this data." (Lambert-Dean Decl. n.5.)

enforcement purposes, is currently the subject of a civil investigation and its release would constitute a serious impairment of Federal tax administration and interfere with enforcement proceedings. (*Id*. ¶¶ 14-15.) Nichols, who is familiar with plaintiff's FOIA request and the documents at issue, states that plaintiff is currently the subject of an ongoing civil examination by an IRS Revenue Agent on Nichols's staff, and the information plaintiff seeks is the information at issue in the examination. (Nichols Decl. ¶¶ 3, 6.) He contends that the release of certain documents would allow plaintiff to determine the nature, direction, scope and limits of the investigation, as well as the evidence secured in response to IRS summonses and the Service's reliance thereon; would allow plaintiff earlier and greater access to information about the investigation than he would otherwise be entitled to receive and would afford plaintiff the opportunity to construct defenses and/or tamper with evidence since he would know what information has and has not been collected. (*Id*. ¶ 5.)

Nichols declares that pages 5-6 describe the methodology used to gather data with respect to offshore credit card accounts and includes lists that investigators should consider when looking at data from credit card companies in countries considered tax havens; and pages 52-60 are a memorandum from the Deputy Director of Compliance Policy to the Deputy Director of Compliance Field Operations providing guidance for conducting audits of tax returns identified through the Offshore Credit Card Project ("OCCP"). (*Id*. ¶¶ 6(a)-(b).) Nichols contends that the following documents would allow plaintiff earlier and greater access to information than he would otherwise be entitled to: documents specific to certain credit card accounts obtained from the IRS's Offshore Credit Card Database (pages 63-65, 209-213 ); documents with plaintiff's name and address along with the address of either plaintiff or someone with the same name as plaintiff at a location in the Caribbean and containing detailed credit card account activity such as purchase and payment

amounts and dates (pages 107, 130-138); and a "Classification Sheet Offshore Credit Card Project" listing plaintiff's social security number and describing how and why he was selected for audit (page 208). (*Id.* ¶¶ 6(c)-(e).) Nichols contends that releasing the following documents would allow plaintiff to determine the nature, direction, scope and limits of the investigation: documents gathered as a result of John Doe summonses issued by the IRS on Credomatic for information associated with credit cards issued to a person with the same name as plaintiff by financial institutions in certain Central American countries the IRS considers tax havens (pages 214-256 ); a link analysis graph between someone with plaintiff's name and another entity illustrating a relationship between them and providing detail as to how to interpret the graph (pages 257-259); and a "Case Building Cover Sheet, Offshore Credit Card Project" specific to plaintiff that includes sources of information for the investigation and information regarding the search of IRS databases and public records (page 276). (*Id.* ¶¶ 6(f)-(h).)

Plaintiff maintains that the IRS never advised him that it lacked sufficient information to determine whether certain documents pertained to him nor did the IRS request additional information to make such a determination. (Pl. Mem. Opp. Summ. J. at 3.) Plaintiff challenges only the refusal to release documents which may pertain to him, not documents which pertain solely to third-parties or those identified as CTRs. (*Id.*)[3] Thus, plaintiff contests the IRS's refusal to release the following documents only: pages 63-65, 107, 130-138, 208-259 and 276. (Pl. Mem. Opp. Summ. J. at 24.)

---

[3] The IRS claimed pages 86-88 were exempt pursuant to 31 U.S.C. 5319 in conjunction with FOIA exemption (b)(3) because the documents are CTRs filed pursuant to Title 31 requirements. (Def. Mem. Supp. Summ. J. at 8; Lambert-Dean Decl. ¶ 11(b).)

**DISCUSSION**

## I.    <u>Standard of Review</u>

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "The Act is broadly conceived, and its basic policy is in favor of disclosure." *Id*. at 220 (internal quotation marks and citation omitted). Upon request, FOIA mandates disclosure of records held by a federal agency unless the documents fall within enumerated exemptions. *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001). Consistent with the Act's goal of broad disclosure, these exemptions must be narrowly construed. *Id*.; *see also Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999). Congress carefully structured nine exemptions from the otherwise mandatory disclosure requirements, and unless the requested material falls within one of these nine statutory exemptions, records must be made available on demand. *Robbins*, 437 U.S. at 220-21. Despite this goal of liberal disclosure, courts recognize that the statutory exemptions are intended to have meaningful reach and application. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

FOIA provides that a reviewing court shall review *de novo* an agency determination to withhold information. *See* 5 U.S.C. § 552(a)(4)(B); *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999). To prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *Sussman v. U.S. Dep't of Justice*, 2006 WL 2850608, at *10 (E.D.N.Y. Sept. 30, 2006). "The crucial issue is not whether relevant documents

9

might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Sussman*, 2006 WL 2850608, at *10 (internal quotation marks and citation omitted).

The agency's burden is satisfied by affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why withheld documents fall within an exemption. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Affidavits submitted by an agency are "accorded a presumption of good faith." *Safecard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). If the agency submissions are adequate, the district court may award summary judgment on the basis of affidavits. *Grand Cent. P'ship*, 166 F.3d at 478 ("A district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.") (internal quotation marks and citation omitted); *Ferguson v. F.B.I.*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) ("[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment."). Once the agency has satisfied its burden, in order to justify discovery the plaintiff must make a showing of bad faith on the part of the agency or provide some tangible evidence that an exemption claimed by the agency should not apply or that summary judgment is otherwise inappropriate. *See Carney*, 19 F.3d at 812.

## II.   <u>Adequacy of the IRS's Search</u>

Plaintiff argues that summary judgment is inappropriate because the IRS has not established its search was adequate, a question of fact remains as to whether certain withheld documents pertain

to plaintiff, and the IRS has not established that release of the documents would jeopardize the ongoing civil examination. (Pl. Mem. Opp. Summ. J. at 8.)

Plaintiff argues that, as a threshold matter, the IRS did not establish that it performed an adequate search for the requested records. (*Id*.) Plaintiff argues that Lambert-Dean did not perform the search herself and did not provide information as to how the search was conducted, therefore her declaration is not competent to establish that the search was "'reasonably calculated to uncover all relevant documents.'" (*Id*. at 9 (quoting *NYC Apparel FZE v. U.S. Customs & Border Prot.*, 2006 WL 167833, at *7 (D.C. Cir. Jan. 23, 2006)).) Additionally plaintiff contends that it appears from the declaration that the search merely determined the location of documents, and no further description of search methods was provided. (*Id*. at 10.)

The IRS counters that the declaration is adequate because it provides information as to who searched for the records and the methods used. Lambert-Dean states that a search was initially conducted by the Senior Disclosure Specialist in Philadelphia who determined that the revenue agent in Buffalo had the responsive documents. It is not necessary that the employee who performed the search supply an affidavit describing it. The affidavit of Lambert-Dean, who was responsible for supervising the search efforts, is sufficient to fulfill the Rule 56(e) "personal knowledge" requirement. (Def. Reply Mem. Supp. Summ. J. at 1-2.) Additionally, the name of the Specialist in Philadelphia who conducted the search was included in the letters sent to plaintiff and is provided in Lambert-Dean's Reply Declaration. (*Id*. at 2.) The declaration also stated the search measures taken. Lambert-Dean's initial declaration stated that the Specialist in Philadelphia determined that the agent in Buffalo had the responsive documents which were forwarded to Philadelphia, then to Baltimore, and then to Lambert-Dean. (*Id*. at 3.) Lambert-Dean's Reply Declaration offers further

detail. Upon receipt of the request, the head of the Buffalo office, Nichols, contacted Specialist Slocum, who accessed the IRS's E-DIMS and determined that the request was assigned to Philadelphia. Nichols then contacted the Philadelphia office and spoke with Specialist King who was assigned to plaintiff's request. (*Id*.) Nichols told King that his subordinate, Agent Bhagwandeen, had responsive documents. King contacted Bhagwandeen and determined that he did have responsive documents and asked him to send her a copy of his complete file on plaintiff. (*Id*. at 3-4.) King then forwarded the documents to Lambert-Dean who confirmed that the search yielded the documents plaintiff requested, given that plaintiff's description of the records matched the records assembled by Bhagwandeen. (*Id*. at 4.) Because the declaration sets forth who conducted the search, which files were searched and how the responsive files were identified, the IRS maintains that its actions were more than adequate to identify and locate the responsive documents. (*Id*. at 4-5.) Finally, the IRS argues that even if the search was inadequately described, plaintiff has not identified any database or records system that he believes the IRS failed to search, nor does he suggest that the IRS failed to produce any responsive documents, therefore he is not entitled to summary judgment. (*Id*.)

"An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney*, 19 F.3d at 814; *see also Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989) ("An agency may prove the reasonableness of its search through affidavits from responsible agency officials, as long as such affidavits are relatively detailed, nonconclusory, and submitted in good faith."); *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993) (declarations of a supervisor in the FOIA section of the FBI's records division,

who reviewed the information in his official capacity, and declarations of persons responsible for directing FOIA searches at the CIA and determining the applicability of FOIA exemptions, are sufficient to satisfy the government's burden of submitting affidavits of responsible agency officials). The declaration of Lambert-Dean, the IRS employee responsible for coordinating review and disclosure of documents pursuant to FOIA requests once litigation has begun, states that she reviewed the documents in her official capacity and is therefore adequate to prove the reasonableness of the IRS's search, as long as it is sufficiently detailed and submitted in good faith. Plaintiff does not argue bad faith, but challenges the declaration only as insufficiently detailed.

A district court may award summary judgment based on declarations and affidavits showing that the agency made a good faith effort to search for the requested documents, using methods "reasonably calculated" to produce documents responsive to the FOIA request. *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). The agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents. *Id*. at 368. Courts accord a presumption of good faith to detailed agency affidavits. *Sussman*, 2006 WL 2850608, at *12. If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on the issue. *Garcia*, 181 F. Supp. 2d at 366 (declaration describing the FBI's method for searching files in detail, the actual file located as a result, the subject matter of the file searched, and the documents found and released to plaintiff fulfills the requirement that a declaration demonstrate that the agency used methods "reasonably calculated" to produce documents responsive to the plaintiff's FOIA request); *see also Lawyers Comm. for Human Rights v. I.N.S.*, 721 F. Supp. 552, 566 (S.D.N.Y. 1989) ("A search for responsive

documents need not, and indeed could not, be perfect. An agency's FOIA search need only be reasonably designed to identify and locate responsive documents.").

The Lambert-Dean declaration explains why the documents plaintiff requested would be found in Buffalo. An agent at the Buffalo office was conducting an investigation of plaintiff and had compiled the documents that plaintiff now seeks. A Disclosure Specialist accessed the IRS information system, E-DIMS, in response to plaintiff's request. The documents were reviewed by Senior Disclosure Specialist King with Agent Bhagwandeen, who was conducting the investigation, and Lambert-Dean. They all concluded the documents were responsive to plaintiff's request. The declaration is sufficient to show that by searching databases and contacting several offices, the IRS made a good faith effort to search for the requested documents, using search methods that were "reasonably calculated to uncover all relevant documents" under the circumstances. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *George v. I.R.S.*, 2007 WL 1450309, at *4 (N.D. Cal. May 14, 2007) (declaration describing the IRS's computer-based method of maintaining tax records, efforts in searching for responsive records using the IRS's Integrated Data Retrieval System, interviewing IRS agents, contacting the IRS's Office of Appeals, and discussing plaintiff's request with the IRS's Disclosure Office was "plainly adequate to demonstrate the thoroughness of the IRS's search for responsive documents"); *Holbrook v. I.R.S.*, 914 F. Supp. 314, 316 (S.D. Iowa 1996) (declaration stating employee identified the documents sought, determined who had the documents, requested and received the documents from that person, read the requested documents, and met with the investigating agent, was adequate).

### III.    FOIA Exemptions

FOIA exemption (b)(3) provides for withholding matters specifically exempted from disclosure by a qualifying statute.[4]  26 U.S.C. § 6103 is a qualifying statute under exemption (b)(3). *See Breuhaus v. I.R.S.*, 609 F.2d 80, 83 (2d Cir. 1979) ("If a document constitutes 'return information' under s 6103, it comes within FOIA exception three."); *see also Church of Scientology of Cal. v. I.R.S.*, 484 U.S. 9, 11 (1987) (internal quotation marks omitted); *Cliff v. I.R.S.*, 496 F. Supp. 568, 571 (S.D.N.Y. 1980).

26 U.S.C. § 6103(e)(7) permits disclosure of taxpayer return information to an authorized person "if the Secretary determines that such disclosure would not seriously impair Federal tax administration."  To qualify for the FOIA exemption under (b)(3) pursuant to section 6103(e)(7), the IRS must demonstrate that two criteria have been met: (1) the documents must constitute "return information" and (2) the disclosure of the information would seriously impair Federal tax administration.  *Currie v. I.R.S.*, 704 F.2d 523, 531 (11th Cir. 1983).  The definition of return information is broad, and includes:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

---

[4]  Exemption (b)(3) reads, in pertinent part: "This section does not apply to matters that are – specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).

26 U.S.C. § 6103(b)(2)(A); *see Lehrfeld v. Richardson*, 132 F.3d 1463, 1467 (D.C. Cir. 1998) (deferring to IRS's "reasonable interpretation" that documents it either receives or creates during the initial investigation of an organization seeking tax-exempt status constitute "return information" within the meaning of § 6103 and are therefore not subject to disclosure).

The IRS argues that for the same reasons the documents are exempt pursuant to section 6103(e)(7), they are exempt pursuant to FOIA exemption (7)(A). 5 U.S.C. § 552(b)(7)(A) exempts from production "records or information compiled for law enforcement purposes, but only to the extent that the production of such enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." For exemption (7)(A) to apply, the IRS must show the documents at issue are records or information compiled for law enforcement purposes and that the release of the information could reasonably be expected to interfere with enforcement proceedings. Law enforcement purposes include both civil and criminal proceedings. *See White v. I.R.S.*, 707 F.2d 897, 902 (6th Cir. 1983); *Pope v. U. S.*, 599 F.2d 1383, 1386 (5th Cir. 1979); *Williams v. I.R.S.*, 479 F.2d 317, 318 (3d Cir. 1973) (affirming grant of summary judgment on the grounds that data compiled in connection with an audit for tax liability constituted an investigatory file compiled for law enforcement purposes within the meaning of exemption 7). Therefore to qualify under either exemption, the IRS must establish that the records are "return information" or were compiled for law enforcement purposes, the release of which would interfere with the law enforcement purpose of Federal tax administration.

According to the Lambert-Dean and Nichols declarations, documents 63-65, 107, 130-138, 208-259 and 276 are exempt pursuant to Section 6103(e)(7) and FOIA exemption (7)(A). (Lambert-Dean Decl. ¶¶ 14-15; Nichols Decl. ¶ 4.) Documents 63-65 and 209-213 consist of information

16

regarding credit card accounts obtained through the IRS's Offshore Credit Card Database. (Nichols Decl. ¶ 6(c).) Documents 107 and 130-138 contain plaintiff's name and address and a Caribbean address along with detailed credit card account activity. (*Id*. ¶ 6(d).) Document 208 lists plaintiff's social security number and describes how and why he was selected for audit based on offshore credit card activity. (*Id*. ¶ 6(e).) Documents 214-256 were gathered as a result of John Doe summonses on Credomatic for information associated with credit cards issued by financial institutions in countries considered tax havens. (*Id*. ¶ 6(f).) Documents 257-259 include a link analysis graph illustrating a relationship between someone with plaintiff's name and a financial entity and details on how to interpret the graph. (*Id*. ¶ 6(g).) Document 276 is specific to plaintiff and includes information on the research sources for the investigation involving him. (*Id*. ¶ 6(h).)

The IRS states that the documents were generated or compiled during the identification and examination of plaintiff's tax returns for possible fraudulent offshore credit card activity, which is a law enforcement purpose, and also makes the records "return information." (Def. Mem. Supp. Summ. J. at 15-16.) They argue that the release of the information can reasonably be expected to interfere with Federal tax administration, a law enforcement proceeding, because it would allow plaintiff to: determine the nature, direction, scope and limits of the investigation; to determine the evidence secured in response to the summonses and the IRS's reliance thereon; gain earlier and greater access to information about the investigation than he would otherwise be entitled to receive and have the opportunity to construct defenses and/or tamper with evidence since he would know what information has and has not been collected. (*Id*. at 16; Nichols Decl. ¶ 5.)

This information is "return information" because, as the declarations make clear, it was received by, prepared by, or collected by the Secretary with respect to the determination of the

existence, or possible existence, of plaintiff's tax liability.  Plaintiff argues that the records consist mainly of credit card account information gathered by Credomatic, not the IRS, and is therefore not "return information" under section 6103.  But it does not matter that the information was gathered by Credomatic, since it was received by the IRS pursuant to summonses during an investigation.  *See Williams*, 479 F.2d at 318 (affirming grant of summary judgment on the grounds that the data compiled in connection with an audit of an individual's income tax liability constituted "an investigatory file compiled for law enforcement purposes" within the meaning of 5 U.S.C., § 552 (b)(7)) (internal quotation marks omitted); *Cliff*, 496 F. Supp. at 572 (memoranda prepared by IRS staff discussing the effects of various IRS Revenue Procedures on the potential or actual tax liability of several specific taxpayers are documents "prepared by, furnished to, or collected by the Secretary with respect to . . . the existence, or possible existence, of liability"and thus are covered by the statute); *Landmark Legal Found. v. I.R.S.*, 267 F.3d 1132, 1135, 1138 (D.C. Cir. 2001).

Plaintiff first questions the adequacy of Nichols's declaration because he is not the agent conducting the examination, and although he claims to be familiar with plaintiff's FOIA request, he does not claim to be familiar with the examination.  (Pl. Mem. Opp. Summ. J. at 16.)  The IRS responds that Nichols, not the Revenue Agent, is the individual with the delegated authority to make a determination that disclosure would impair Federal tax administration.  (Def. Reply Mem. Supp. Summ. J. at 9 (citing Nichols Decl. ¶ 6, Ex. A).)  For the same reason that Lambert-Dean's declaration was sufficient to demonstrate the adequacy of the search, Nichols's declaration is sufficient to demonstrate that release of the documents would interfere with law enforcement proceedings.

Plaintiff also contends that Nichols's explanations about how releasing the information will

interfere with any prospective enforcement proceedings are "vague" and "conclusory." (Pl. Mem. Opp. Summ. J. at 20.) The IRS responds that the declaration is sufficient because the government is not required to make a showing with respect to each document, but rather may make general determinations that, with respect to particular kinds of proceedings, disclosure of certain kinds of investigatory records would generally interfere with the proceeding. (Def. Reply Mem. Supp. Summ. J. at 9.)

Affidavits must contain more than mere conclusory statements to show why disclosure of requested documents could reasonably be expected to interfere with enforcement proceedings. *See Miller v. U.S.D.A*, 13 F.3d 260, 263 (8th Cir. 1993); *Grasso v. I.R.S.*, 785 F.2d 70, 77 (3d Cir. 1986); *Neill v. Dep't of Justice*, 1994 WL 88219, at *1 (D.C. Cir. Mar. 9, 1994). However,

> [u]nder exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. Rather, federal courts may make generic determinations that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.

*Barney v. I.R.S.*, 618 F.2d 1268, 1273 (8th Cir. 1980) (internal quotation marks and citation omitted); *see also Lewis v. I.R.S.*, 823 F.2d 375, 379 (9th Cir. 1987), *Wright v. O.S.H.A.*, 822 F.2d 642, 646 (7th Cir. 1987). Nichols's declaration is sufficiently specific to satisfy these requirements. With respect to this particular investigation, Nichols adequately establishes that releasing records of offshore credit card accounts and related documents would generally interfere with the enforcement proceedings.

Plaintiff also disagrees with Nichols's reasoning that releasing the documents would interfere with the investigation and administration of Federal tax law. He argues that there is no risk that

releasing the credit card account information would allow him to determine the nature, direction, scope and limits of the investigation because the IRS has already notified him that he is being investigated for possible fraudulent offshore credit card activity and therefore the nature, direction, scope and limits have already been revealed. (Pl. Mem. Opp. Summ. J. at 17.) He also argues that there is no risk that releasing the information would allow him to determine the evidence secured and relied upon by the IRS because it was necessary for the IRS to describe the documents in making this motion, and therefore the agency has already revealed what type of information it collected. (*Id.* at 17-18.) Both plaintiff's arguments fail for the same reason. The documents contain more than the mere fact that plaintiff is being investigated for offshore credit card activity, and although the IRS revealed enough about them to survive summary judgment, it did not reveal the exact contents of these documents. Because Nichols's declaration is sufficiently specific as to the documents and the effect disclosure would have on the investigation, and because his declaration is accorded good faith, it is sufficient to establish that release of the actual documents would allow plaintiff to determine the nature, direction, scope and evidence relied upon. *See May v. I.R.S.*, 1991 WL 328041, at *1, 4 (W.D. Mo. Dec. 9, 1991) (determining documents exempt from FOIA where IRS employees declared that release of information collected with respect to the determination of the existence of income tax liability of the plaintiff would interfere with the law enforcement by "divulging the scope and direction of the civil examination and criminal investigation, divulging the evidence collected by the government and the reliance placed by the government on such evidence, and divulging the identity of potential witnesses an[d] the nature of the information provided") (internal quotation marks and citation omitted).

Plaintiff contends that the IRS's argument that releasing documents would allow him earlier

and greater access to information is without merit because, to the extent the records pertain to

plaintiff, he already has access to the information contained in those records. (Pl. Mem. Opp. Summ.

J. at 18.) However, the documents were generated from IRS databases and produced to the IRS as

a result of summonses, and it is not clear why plaintiff would have these specific documents. While

plaintiff may have documents related to any offshore accounts he may have, those documents are not

the documents at issue here.

Finally plaintiff argues that releasing the documents would not provide him with an

opportunity to construct defenses or tamper with evidence because if the matter proceeds to trial he

would be entitled to receive copies of the documents the IRS intends to use as support. (*Id*. at 18-

19.) The same is true, he argues, with respect to the risk that the evidence will be destroyed. (*Id*.

at 19.) It may be true that if this matter proceeds to trial plaintiff will be entitled to discovery of

some or all of the documents at issue. However, FOIA exemption (7)(A) and section 6103(e)(7)

were created specifically to avoid the early disclosure of evidence and the potential resulting impact

that such disclosure would have on an ongoing government investigation. *See Barney*, 618 F.2d at

1272-74, n.15 ("One of the primary purposes of exemption 7 was to prevent harm [to] the

Government's case in court by not allowing litigants earlier or greater access to agency investigatory

files than they would otherwise have[] [and to prevent] prematurely revealing the government's

case.") (internal quotation marks and citation omitted); *Chamberlain v. Kurtz*, 589 F.2d 827, 841

(5th Cir. 1979) (determining that release of documents discussing either the facts or law relating to

the fraud claim against plaintiff or the computation of tax deficiencies were exempt because the

exemptions were designed "precisely to avoid the damage to tax collection that would result from

the untimely disclosure of the IRS' files"). For this reason, plaintiff's argument fails.

Plaintiff argues that enforcement proceedings will not be jeopardized by the disclosure of information which is already in the possession of the target of the investigation or which was provided by that person. (P. Mem. Opp. Summ. J. at 19.) Plaintiff cites a number of cases for support. However, in those cases the documents at issue were either provided by the plaintiff to the government or were already disclosed in some way by the government itself. *See Wright*, 822 F.2d at 646-47; *Scheer v. U.S. Dep't of Justice*, 35 F. Supp. 2d 9, 13 (D.D.C. 1999) (finding that defendant's reason for not releasing a document, that plaintiff would reveal the document to another individual who was the subject of investigation, was unfounded since defendants themselves had already revealed the document to that individual); *Lion Raisins, Inc v. U.S.D.A.*, 354 F.3d 1072, 1085 (9th Cir. 2004) ("Because [plaintiff] already has copies of the documents it seeks from [the government], [the government] cannot argue that revealing the information would allow [plaintiff] premature access to the evidence upon which it intends to rely at trial."). That is not the case here. Even if the information pertains to plaintiff solely and not third parties, it was obtained from IRS databases and pursuant to summonses and not from plaintiff. It is exactly the type of information protected by FOIA exemption (7)(A) and section 6103(e)(7).

Courts have upheld the withholding of "return information" compiled during the course of a civil or criminal investigation similar to the information withheld here. *See Currie*, 704 F.2d at 531-32 (finding that memoranda reflecting the direction and scope of the investigation, interviews with informants and information from third parties related to financial transactions constituted "return information" because they were compiled pursuant to an investigation, and determining that release of the documents would hamper the investigation by disclosing the information, revealing the government's case prematurely and thwarting the enforcement of revenue laws); *May*, 1991 WL

328041, at *4; *Barney*, 618 F.2d at 1272-74, n.15; *Chamberlain*, 589 F.2d at 841. Plaintiff is currently the subject of an ongoing civil examination by an IRS Revenue Agent and the information he seeks is the information at issue in that examination. (Nichols Decl. ¶ 3.) Nichols's declarations that plaintiff would have earlier and greater access to information about the investigation than he would otherwise be entitled to receive and could determine the nature, direction, scope and limits of the investigation are sufficiently specific and provide valid and credible reasons to withhold the documents. (*Id*. ¶¶ 6(c)-(h).) It is possible that if the IRS released documents specific to certain credit card accounts that were obtained from its database or as a result of summonses on Credomatic, a document describing how and why plaintiff was selected for audit based on offshore credit card activity, documents describing and depicting a link analysis graph between someone with plaintiff's name and a financial entity and a document specific to plaintiff and including sources of information that formed the research for the investigation it would thwart the ongoing investigation and the enforcement of Federal tax laws.

Because these documents were compiled and received by the IRS for an investigation into offshore credit card activity, they satisfy the requirements of FOIA exemption (7)(A) and section 6103(e)(7). Because Nichols's declaration explains with sufficient specificity how the documents would interfere with the investigation and Federal tax administration, and plaintiff has not offered a valid reason to question those explanations, the documents at issue are exempt. All the documents plaintiff contested are exempt pursuant to FOIA exemption (b)(7)(A) and section 6103(e)(7), therefore we do not address the IRS's argument that some of the documents are exempt pursuant to section 6103(a) or FOIA exemption (b)(7)(C).

IV.     *In Camera* **Review**

Plaintiff requests that the Court perform an *in camera* review of the disputed documents, arguing that the review is appropriate because the agency's supporting declarations are insufficiently detailed to permit a meaningful review of the FOIA exemptions claimed and the documents are relatively few in number.  (Pl. Mem. Opp. Summ. J. at 24.)  Because we determined that the declarations are sufficiently detailed and specific to justify withholding the documents, and because there is no evidence that the IRS has acted in bad faith, *in camera* review is not necessary.  *See Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("*In camera* review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion."); *Lead Indus. Assoc., Inc., v. O.S.H.A.*, 610 F.2d 70, 88 (2d Cir. 1979) ("It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter."); *Garcia*, 181 F. Supp. 2d at 370 ("*In camera* review of documents that have been withheld or redacted is disfavored. . . .  Accordingly, a court should order an *in camera* review of the contested documents only when the court is unable to assess the validity of the exemptions claimed upon its review of the indexes and affidavits provided by the government agency.") (internal quotation marks and citations omitted).

## CONCLUSION

For all the foregoing reasons, defendant Internal Revenue Service's motion for summary judgment is granted. Judgment to be entered by the Clerk of the Court.

SO ORDERED.

Dated: White Plains, New York
　　　February 29, 2008

William C. Conner
Sr. United States District Judge